JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Copeland Tyler

**(b)** County of Residence of First Listed Plaintiff ____________
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael T. van der Veen
Steven R. Bryson
1219 Spruce St. Philadelphia, PA 19107

## DEFENDANTS

Adelphoi USA,Adelphoi Village, Adelphoi Education, INC., Adelphoi Western Region, Inc., and John/Jane Does 1-100

County of Residence of First Listed Defendant ____________
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Amy Kerlin
Stefanie Lacy

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 1983, 20 U.S.C § 1681

Brief description of cause:
Deprivation of federal civil rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE Jeffrey L. Schmehl DOCKET NUMBER 5:23-CV-03684

DATE
September 14, 2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ Steven R. Bryson, Esquire

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COPELAND TYLER**<br><br>**vs.**<br><br>**ADELPHOI USA, ADELPHOI VILLAGE, ADELPHOI EDUCATION, INC., ADELPHOI WESTERN REGION, INC.**<br><br>**And,**<br><br>**JOHN/JANE DOES 1-100,** | **Civil Division – Civil Rights**<br><br>**CASE NO.: 23-CV-3684** |

**THIRD AMENDED COMPLAINT**

Plaintiff, **Copeland Tyler**, individually, allege as follows, against Defendants **Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., Adelphoi Western Region Inc.** (collectively "Adelphoi", the "School", and/or "Adelphoi Defendants"**)**, and John/Jane Does 1-100, in their official and individual capacities (the "John/Jane Doe Defendants").

**INTRODUCTION**

1. Adelphoi operates facilities where juveniles are held in custody in Pennsylvania.

2. Adelphoi, by contract and legislation in Pennsylvania, and all the states it operates, has been delegated a critical and legislatively mandated public function: (a) to provide a custodial setting for children adjudicated delinquent in juvenile court proceedings, as well as children at risk for delinquency or criminal conduct; and (b) to carry out legislatively mandated control and related services, and to provide appropriate sanctions and rehabilitation under the laws governing punishment and treatment of juveniles for criminal acts.

3. Adelphoi offers rehabilitation, education and support services for youth through a trauma-informed approach. Operating since at least 1973 and managed by leaders and innovators

in the field of juvenile justice, Adelphoi are both community-based and residential, serving both local and out-of-state students. Available at https://www.Adelphoi.org/

4. Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, they were exposed to predators and abusers. Adelphoi failed to enact safety measures and other policies to protect the children, failed to adequately screen, hire, train, and supervise staff, and failed to fulfill its duties under state and federal law and as a result of the Defendant's misconduct, children in Adelphoi facilities have been reportedly sexually abused – often by Adelphoi staff.

5. Thus, Adelphoi acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

6. Adelphoi was acting as an arm of the states and Commonwealth, where it operates, acts under the color of law for 42 U.S.C. § 1983 liability purposes.

7. At all relevant times, Defendants Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., and Adelphoi Western Region Inc. were acting under color of state law because they performed functions traditionally and exclusively reserved to the State. Specifically, Defendants operated residential juvenile placement facilities pursuant to contracts with the Commonwealth of Pennsylvania and various county agencies for the detention, custody, supervision, treatment, and education of court-ordered juvenile placements. In performing these functions, Defendants exercised authority delegated by the State over the physical custody, supervision, discipline, and rehabilitation of juveniles adjudicated through the juvenile justice system.

8. Defendants' operation of these facilities constituted a public function because the custody and supervision of adjudicated juveniles is a core governmental responsibility under the Pennsylvania Juvenile Act and related statutory and regulatory frameworks. By accepting court-ordered placements and exercising custodial authority over juveniles, Defendants acted jointly with state and county officials and exercised powers traditionally reserved to the State.

9. The constitutional violations suffered by Plaintiff were not isolated incidents but were the direct and foreseeable result of Defendants' policies, customs, and practices. Defendants maintained and tolerated policies and customs that permitted staff members to physically and sexually abuse juveniles placed in their custody and failed to adequately screen, hire, train, supervise, and discipline employees responsible for the care and protection of those juveniles.

10. Defendants were aware, or should have been aware, of prior incidents of abuse, excessive force, and misconduct involving staff members at Adelphoi facilities through complaints by residents, reports to supervisors, internal incident reports, governmental oversight, and prior litigation. Despite this knowledge, Defendants failed to implement adequate safeguards, failed to investigate complaints of abuse, and failed to discipline or remove staff members who posed a risk to juveniles in their custody.

11. In Pennsylvania the Juvenile Court Judges Commission adopted the "Balanced and Restorative Justice" (BARJ) philosophy which requires that "youth committing delinquent acts are provided with supervision, care, and rehabilitation (the legal basis for treatment of those adjudicated in the juvenile court system in Pennsylvania) in a manner that is balanced to include (1) community protection, (2) personal and legal responsibility, and (3) competency development."

12. Adelphoi also professes to employ a "Balanced and Restorative Justice (BARJ) compliant, residential program utilizing a Sociological Model, designed to effectuate long-term behavioral change and enhance life skills development."

13. Adelphoi program includes room and board, clothing, behavior management individual and group counseling, academic and vocational programming, medical and dental services, as well as athletic and recreational opportunities." Available at https://www.Adelphoi.org/

14. Adelphoi offers services for court-adjudicated youth and non-delinquent youth. Available at https://www.Adelphoi.org/

15. Defendants violated Plaintiff's clearly established constitutional rights under the Fourteenth Amendment to the United States Constitution, including his right to bodily integrity, his right to be free from excessive force, and his right to reasonable protection from harm while in state custody.

16. Defendants violated Plaintiff's state and federal constitutional rights to equal educational opportunities.

17. Adelphoi caused Plaintiff's injuries and harms by failing to properly train, supervise, and discipline the John/Jane Doe Defendants and, as a result, the John/Jane Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

18. Further, Adelphoi failed to protect Plaintiff from assaults and abuse by staff and fellow students at Adelphoi.

19. Adelphoi itself and its staff members, individually and collectively, deprived Plaintiff of his constitutionally guaranteed right to an education and equal educational opportunities.

20. Adelphoi failed to properly protect Plaintiff and showed reckless disregard and deliberate indifference to the widespread violations of his rights, despite being aware for decades of the conduct of the John Doe Defendants, including physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiff and the children residing at Adelphoi.

21. Additionally, in the Commonwealth of Pennsylvania state court, separate lawsuits, raising almost identical claims, including both physical and sexual abuse, to those contained within this complaint, including complaints for excessive force, fondling, groping, sodomy, and rape have been filed against Adelphoi and/or the other related named Defendants.

22. Because of Defendants' conduct, Plaintiff has suffered and continues to suffer harm, including emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, all of which adversely affect his daily activities and full enjoyment of life. Plaintiff has sustained and will continue to sustain loss of earnings and earning capacity and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

23. Plaintiff brings this lawsuit to hold Adelphoi accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Adelphoi's care.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), because Plaintiff alleges claims arising under the laws of the United States, including 20 U.S.C. § 1681 and 34 U.S.C. § 2034, in addition to 28 U.S.C. § 1343, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, and 1988, and alleges deprivation of his federal constitutional right to equal educational opportunities.

25. At all relevant times, all Defendants acted under the color of state law.

26. This Court has subject matter jurisdiction over Plaintiff's individual claims based on the federal questions raised pursuant to 28 U.S.C. § 1331. Defendant Adelphoi operates in New York and Ohio as its principal places of business. The amount in controversy, without interest and costs, exceeds $75,000.

27. This Court has supplemental jurisdiction for the state law claims, pursuant to 28 U.S.C. §1367.

28. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events and/or omissions giving rise to the claim occurred in this district.

## PARTIES

29. Plaintiff is **Copeland Tyler**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

30. Defendant, **Adelphoi Education, Inc.**, is a registered business with a corporate headquarters office at 1119 Village Way Latrobe, PA 15650.

31. Defendant, **Adelphoi Village**, is a registered business with a corporate headquarters office at 1119 Village Way Latrobe, PA 15650.

32. Defendant, **Adelphoi Western Region Inc.**, is a registered business with a corporate headquarters office at 1119 Village Way Latrobe, PA 15650.

33. At all times relevant hereto, Defendants Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., and Adelphoi Western Region, Inc. operated as a single integrated enterprise and jointly owned, managed, controlled, and operated the Adelphoi facilities where Plaintiff was placed. These entities shared common ownership, officers, management, policies, training procedures, and operational control, and collectively directed the hiring, supervision, discipline, and retention of staff responsible for the care, custody, and supervision of juveniles placed at Adelphoi facilities. Each entity acted as the agent, servant, and/or alter ego of the others and participated in the policies, practices, and customs that permitted the abuse described herein. As a result of this integrated structure and shared operational control, each Adelphoi Defendant participated in and is responsible for the policies, practices, and customs that permitted the abuse described in this Complaint. The Adelphoi Defendants held themselves out to the public, to government agencies, and to the courts as operating a unified system of residential treatment programs collectively known as “Adelphoi.

34. The precise roles, responsibilities, and corporate relationships among the Adelphoi Defendants are presently within the exclusive knowledge and control of Defendants and will be further revealed through discovery. At all relevant times, however, each Adelphoi Defendant exercised control over the policies, practices, and operations governing the facility where Plaintiff was placed and therefore bears responsibility for the acts and omissions alleged herein.

35. Defendants **John/Jane Does 1-100** are current and former managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of Adelphoi, who abused and/or facilitated the abuse of children at Adelphoi.

## TOLLING OF STATUTE OF LIMITATIONS

36. Plaintiff's claims are timely pursuant to the doctrines of minority tolling, the discovery rule, and fraudulent concealment.

37. At the time many of the events described herein occurred, Plaintiff was a minor and therefore lacked the legal capacity to bring civil claims. Under Pennsylvania law, the applicable statute of limitations is tolled during a plaintiff's minority.

38. Additionally, due to the nature of the abuse, the coercive custodial environment in which Plaintiff was confined, and the significant power imbalance between Plaintiff and Defendants' staff, Plaintiff was not reasonably aware of the causal connection between Defendants' conduct and the injuries he suffered until well into adulthood.

39. Even after Plaintiff reached the age of majority during his placement, the custodial environment, threats of punishment or extended confinement, and the authority exercised by Defendants' staff prevented him from safely reporting abuse or recognizing the legal nature of his injuries.

40. Defendants further concealed the abuse by discouraging reporting, failing to investigate complaints, retaliating against residents who attempted to disclose misconduct, and maintaining conditions that prevented victims from safely reporting abuse. As a result, Defendants are equitably estopped from asserting a statute of limitations defense.

41. Accordingly, the statute of limitations applicable to Plaintiff's claims was tolled, and Plaintiff's claims are timely.

42. The nature of sexual and physical abuse in custodial settings frequently causes victims to suppress, minimize, or delay recognition of the harm inflicted upon them. Victims of abuse by authority figures often experience profound psychological trauma, including shame, fear of retaliation, confusion regarding the abusive conduct, and difficulty recognizing that the conduct

constituted unlawful abuse. These effects are amplified in institutional environments where victims are dependent upon the institution and its staff for their safety, supervision, and eventual release. As a result of these dynamics, Plaintiff was unable to fully understand the nature, extent, and legal consequences of the abuse he suffered until well after the abuse occurred.

43. Plaintiff therefore did not discover, and could not reasonably have discovered, the causal connection between Defendants' wrongful conduct and the injuries he suffered until much later in life.

## FACTUAL BACKGROUND

A. **Defendants Had a Duty To Provide a Safe And Secure Facility for Juveniles and Provide Educational Opportunities Committed or Otherwise Housed at Adelphoi Pursuant to Constitutional and State Law Mandates.**

44. At all times the Defendants and all their staff members, workers, employees, servants, voluntary, and the like were mandatory reporters pursuant to Pennsylvania law and were required to report any suspected child abuse pursuant to 55 Pa.C.S.A. §3680 ***et seq***; 55 Pa.C.S.A. §3800 ***et seq***; 42 Pa.C.S.A. §§ 6327(a) ***et seq***.; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendants' facility.

45. The Defendants accepted juveniles for placement pursuant to court orders issued from various county and state governmental units.

46. Adelphoi serves as a custodial facility for the placement of juvenile court adjudicated youths, aged 8-18, and other at-risk youth. Operating since at least the early 1970s, Adelphoi has provided juvenile residential care since its inception. It claims to assess the unique needs of each student, teach tools for success and offer meaningful opportunities for personal growth.

47. Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Adelphoi programs. Adelphoi offers many clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Adelphoi such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Adelphoi's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced sexual exploitation, and psychiatric specialty hospitals.

48. For the children who were abused at an Adelphoi facility, it was almost impossible to get help or stop the abuse because Adelphoi reportedly limited the contact many of them had with the outside world, limiting phone calls thereby trapping children with their abusers.

49. Nor was there any clear and safe mechanism by which victims could report abuse within Adelphoi ; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.

50. Many of the children who were abused at Adelphoi were vulnerable, intellectually disabled, and already fleeing from abuse.

51. Adelphoi staff members also took advantage of children who had already been victims of sexual abuse and were at Adelphoi to seek healing.

52. The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are

seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden and children have limited access to police, advocates, or social services representatives who can intervene[1].

53. Prior to the abuse suffered by Plaintiff, Defendants had actual and/or constructive notice that juveniles placed at Adelphoi facilities were at substantial risk of physical and sexual abuse by staff members. This notice arose from multiple sources, including prior complaints by residents, internal incident reports, reports made to supervisors and administrators, governmental oversight of juvenile placements, staff discipline records, and prior lawsuits alleging similar misconduct by Adelphoi employees. Despite this knowledge, Defendants failed to implement adequate safeguards, failed to properly investigate complaints of abuse, and failed to remove or discipline employees who posed a foreseeable risk of harm to juveniles in their custody.

54. Defendants' failure to take reasonable corrective action in response to these warning signs created and perpetuated a culture in which staff members understood that abusive conduct toward juveniles would not be meaningfully investigated or punished. As a result, employees were able to exploit their positions of authority over vulnerable juveniles with little fear of detection or discipline.

55. Despite Defendants' awareness of decades of systematic sexual and physical abuse of children in its care, Adelphoi has failed to enact appropriate uniform national and system-wide protocols and policies to ensure the safety of its youth. Adelphoi acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train

[1] https://www.childwelfare.gov/topics/can/factors/

employees, failing to report known abuse of youth in Adelphoi facilities, and ignoring and covering up complaints alleged against it regarding child abuse.

56. Despite this keen awareness of decades of systematic sexual and physical abuse of children in its care, Adelphoi has failed to enact sufficient measures to ensure the safety of their youth.

57. Moreover, Adelphoi's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

58. The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (*e.g.,* physical, emotional, and sexual abuse) committed within the context of the institution.

59. Indeed, Adelphoi's culture of indifference to the safety and well-being of its patients has caused abuse and sexual violence to flourish at Adelphoi for decades and this toxic culture continues to thrive to this day, even affecting staff.

60. These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in an Adelphoi program or facility across the nation. This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable children and young adults, and gave them the impunity to act without the risk of detection or punishment.

61. Children arrive at Adelphoi facilities seeking treatment, healing, and belonging. For decades, Adelphoi has abused the trust that families have placed in it by allowing a culture of abuse, exploitation, and trauma.

62. Adelphoi is funded in large part by the Commonwealth of Pennsylvania and other government entities, jurisdictions, and agencies, both inside and outside Pennsylvania, to provide services mandated by law for children who have been adjudicated as delinquent in juvenile court.

63. Adelphoi asserts that it provides a rehabilitative, as opposed to punishment-based, program for juvenile offenders and delinquent youth, including Plaintiff. Adelphoi further states that it provides evidence-based programs such as "Positive Behavioral Intervention Supports, Moral Recognition and Coping with Anger" to turn its students away from crime.

64. Adelphoi has been the recipient of placements and commitments of juveniles from Pennsylvania, New York, New Jersey, Delaware, Indiana, Ohio, West Virginia, Michigan, and other states by virtue of its promise of a progressive and effective program for delinquent children, with proven services. Adelphoi has assiduously sought recognition as a model reform school, and has achieved that status, at least for some, as "the Harvard of reform schools." Namely, New York, Ohio, and many Pennsylvania counties had government contracts with Adelphoi, for placing juveniles within their respective jurisdictions at Adelphoi owned and/or operated facilities.

65. Defendants have the duty to provide treatment, supervision, and rehabilitation in accordance with federal and state Constitutional standards, via the Pennsylvania Juvenile Act, and prevailing standards for the care and custody of juveniles in need of treatment and supervision. As detailed in this Complaint, Defendants have failed to provide these services in accord with Constitutional, statutory and community standards of care.

66. The abuse described below was facilitated by Defendants' systemic failures to supervise staff, investigate complaints, and protect juveniles in their custody. Plaintiff suffered abuse while under Defendants' custodial authority at an Adelphoi facility.

67. Juveniles placed in residential treatment or detention facilities are uniquely vulnerable because they are wholly dependent upon the institution and its staff for their safety, supervision, and daily needs. When the State, or an entity acting under color of state law, takes a juvenile into custody and restricts the juvenile's liberty, it assumes a constitutional duty to ensure reasonable safety and to protect the juvenile from harm inflicted by staff or other residents. In such custodial environments, juveniles have limited ability to remove themselves from dangerous situations, to seek outside assistance, or to report misconduct without fear of retaliation. As a result, institutions entrusted with the care of juveniles must exercise heightened vigilance to prevent abuse and exploitation by those placed in positions of authority.

**B. Pattern and Practice of Abuse and Institutional Failure**

68. At all relevant times, the abuse suffered by Plaintiff did not occur in isolation. Rather, the incidents described in this Complaint were the foreseeable result of systemic failures by Defendants to adequately supervise staff, investigate complaints of abuse, and protect juveniles placed in their custody.

69. Over a period of many years, multiple staff members at Adelphoi facilities engaged in abusive conduct toward juveniles placed in their care, including physical assaults, sexual abuse, coercive grooming behavior, and retaliatory discipline against residents who attempted to report misconduct.

70. Defendants were aware, or should have been aware, of the risk that staff members posed to juveniles through prior complaints by residents, internal reports, governmental oversight of juvenile placements, and other information available to Defendants regarding conditions within Adelphoi facilities.

71. Despite this knowledge, Defendants failed to implement adequate safeguards, failed to properly investigate allegations of abuse, failed to discipline or remove dangerous staff members, and failed to implement meaningful oversight to ensure the safety of juveniles placed in their custody.

72. As a direct and foreseeable result of these institutional failures, staff members were able to exploit their positions of authority over vulnerable juveniles and young adults, including Plaintiff, resulting in the abuse described below.

73. Plaintiff's experience described below reflects a broader pattern of misconduct within Adelphoi facilities in which staff members exploited their authority over vulnerable juveniles and young adults. The repeated nature of these incidents across different time periods and involving multiple employees demonstrates systemic failures in supervision, reporting, and institutional accountability that permitted such abuse to occur.

## STATEMENT OF FACTS

74. While housed at Adelphoi Plaintiff was subjected to sexual abuse.

75. Plaintiff resided at Adelphoi's Maximum Security and Mon-Run facilities in or around approximately 2013 when he was a juvenile and approximately 14-15 years old.

76. Plaintiff resided at Adelphoi pursuant to a court order issued by a judge in the Allegheny County Court of Common Pleas.

77. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendants, **Justin, J.D., and Steve** were abusers of children, including Plaintiff.

78. **Justin, J.D., and Steve**, committed acts of abuse against Plaintiff, in an Adelphoi facility in Pennsylvania.

79. At all material times hereto, Adelphoi Defendants, knew or should have known that **Justin, J.D., and Steve**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

80. At all material times hereto, Adelphoi Defendants knew or should have known that **Justin, J.D., and Steve** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

81. At all material times hereto, Adelphoi Defendants took no action and/or failed to timely and adequately take action to warn or otherwise protect the children of Adelphoi, including Plaintiff, from **Justin, J.D., and Steve**.

82. Plaintiff was forced to engage in strip searches by staff members/employees **Justin, J.D., and Steve** who would make jokes, sexual innuendos, and would grope and fondle Plaintiff's buttocks.

83. Moreover, on numerous other occasions **Justin, J.D., and Steve** would slap, hit, and/or smack Plaintiff's buttocks while saying "good game' while Plaintiff was not engaged in any physical activity or sport.

84. Whenever Plaintiff objected to having his buttocks slapped, he would be restrained by **Justin, J.D., and Steve**, especially **Justin,** who would strip search him and further grope his buttocks.

85. Plaintiff was abused on more than 3 occasions in a similar manner.

86. At all times material hereto, as a result of the abuse of Plaintiff by **Justin, J.D., and Steve**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

87. At all times material hereto, as a result of the abuse of Plaintiff by **Justin, J.D., and Steve**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

88. As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

89. Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

90. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

91. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

92. Plaintiff's youth and custodial placement at Adelphoi created a significant power imbalance between Plaintiff and Adelphoi staff, including **Justin, J.D., and Steve**. As a resident placed at Adelphoi through the juvenile placement system, Plaintiff was dependent upon Adelphoi and its staff for supervision, discipline, treatment, and the conditions of daily life. This custodial relationship, together with Adelphoi's asserted authority as a residential treatment provider for vulnerable youth, significantly impaired Plaintiff's ability to resist or report misconduct by staff members.

93. Staff members in custodial juvenile facilities occupy positions of authority and trust over residents. This authority can be exploited through grooming behaviors, manipulation, and coercion that gradually normalize inappropriate conduct and discourage reporting. In such environments, juveniles may feel compelled to comply with staff directives, may fear retaliation or punishment if they resist, and may reasonably believe that complaints will not be taken seriously due to the authority and credibility afforded to institutional staff. These dynamics were foreseeable to Defendants and required heightened supervision and oversight of staff interacting with juvenile residents.

94. The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

95. Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

96. Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

97. Specifically, regarding all the aforementioned staff member(s) it is averred the physical contact made with the respective Plaintiff's genitals/intimate private areas was indecent contact for the purpose of arousing the aforementioned individual.

**C. <u>Defendants' Violations of the Constitutional Rights of Plaintiffs, Abuse of Trust, and Violations of the Standard of Care Pursuant to the States and Commonwealth's Respective Laws, Rules, Regulations, and Statutes</u>**

98. Adelphoi is situated in a pastoral setting with historic buildings and has been marketed as a sought-after placement for juvenile detention, due to its campus, professed commitment to humane and evidence-based treatment, and successful athletic program.

99. In reality, Adelphoi is not idyllic, nor does it provide the services and programs it has advertised. To the contrary, it has for decades failed to provide a safe and secure facility and has abetted and tolerated practices and customs of negligent, reckless, and unconstitutional force and other abuses of those committed for treatment and education.

100. Under its veneer of civility, there is a Dickensian "culture of violence" and intimidation at Adelphoi that severely impacted Plaintiff and other children through systematic uses of force, threats of longer sentences for those who reported abuse, and detention beyond commitment dates for students whose injuries would have been noticed upon release from Adelphoi.

101. Based on prior news reports, numerous lawsuits, and internal complaints, Defendants knew or should have known about child abuse occurring at their facilities.

102. Adelphoi's students also reported officials lying about the rampant child abuse and systematic attempts by Adelphoi and its staff to hide the abuse, going so far as intercepting letters and students getting "beat down" for reporting the abuse to law enforcement and third-party officials with the students often too afraid to report the abuse because they feared retaliation.

103. The pattern of assaults and child abuse was at various times abetted and promoted by threats to students who were prepared to report the abuses, that they would have to go to a worse placement, have their criminal probation violation, their sentences extended, and/or having to do their time all over again.

## CAUSES OF ACTION
## FEDERAL CLAIMS PURSUANT TO THE UNITED STATES CONSTITUTION

### COUNT 1
### Violations of Title IX 20 U.S.C. § 1681 *et seq.*
### Deliberate Indifference to Sexual Harassment, Sexual Abuse, and a Sexually Hostile Educational Environment
### Plaintiff v. Adelphoi Defendants

104. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

105. Title IX of the Education Amendments of 1972 provides that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681(a).

106. Plaintiff is a "person" within the meaning of Title IX.

107. At all relevant times, Adelphoi operated educational programs and activities, including residential educational programming, day school programming, special education programming, and other school-based or education-related services for juveniles placed in its custody.

108. At all relevant times, Adelphoi received Federal financial assistance and was therefore subject to Title IX.

109. At all relevant times, Plaintiff was housed at Adelphoi, and Adelphoi exercised authority over whether he would be placed or remain placed in Adelphoi's programs and facilities.

110. While residing at Adelphoi, Plaintiff was subjected to unwelcome sexual conduct, sexual harassment, sexual abuse, sexual assault, grooming, and other sexually exploitative conduct by Adelphoi staff members, as described above.

111. The sexual harassment, abuse, and assault experienced by Plaintiff constituted discrimination on the basis of sex under Title IX.

112. The sexual harassment, abuse, and assault experienced by Plaintiff were so severe, pervasive, and objectively offensive that they deprived Plaintiff of equal access to educational opportunities, educational benefits, and a safe educational environment.

113. Prior to and during the abuse suffered by Plaintiff, Adelphoi had actual knowledge of sexual abuse, sexual harassment, and sexually exploitative conduct occurring within Adelphoi programs and facilities, including through resident complaints, reports to staff and supervisors, prior lawsuits, media coverage, and other notice described above.

114. Adelphoi had the authority and ability to take corrective action in response to known risks of sexual abuse and sexual harassment involving juveniles placed at Adelphoi.

115. Despite having actual knowledge of these risks, Adelphoi acted with deliberate indifference by failing to adequately investigate allegations of abuse, failing to take prompt corrective action, failing to protect resident youth from known risks, and permitting the sexually hostile environment to persist.

116. Adelphoi further acted with deliberate indifference by, among other things:

a. failing to respond adequately to reports and complaints of sexual abuse and sexual harassment;

b. allowing staff members with known complaints, warning signs, or histories of misconduct to retain access to resident youth;

c. failing to implement adequate reporting, monitoring, and investigative safeguards;

d. failing to supervise staff during times and in locations where abuse was likely to occur; and

e. continuing to expose juveniles to known risks of sexual abuse within Adelphoi programs and facilities.

117. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff was subjected to sexual harassment, sexual abuse, sexual assault, emotional distress, humiliation, psychological harm, and loss of educational opportunity.

**COUNT 2**
**42 U.S.C. § 1983 – Fourteenth Amendment.**
**Deliberate Indifference/ Failure to Protect/ Deprivation of Bodily Integrity**
**Plaintiff v. Adelphoi Defendants**

118. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

119. At all relevant times, the Adelphoi Defendants were acting under color of state law by operating custodial residential facilities for court-ordered juvenile placements and performing functions traditionally and exclusively reserved to the State.

120. At all relevant times, Plaintiff was in the custody, care, and control of the Adelphoi Defendants and was dependent upon Adelphoi and its staff for supervision, safety, care, discipline, and the conditions of daily life.

121. By virtue of this custodial relationship, the Adelphoi Defendants owed Plaintiff a constitutional duty to ensure his reasonable safety and to protect him from abuse, excessive force, sexual assault, and other foreseeable harm inflicted by staff members or others acting under Adelphoi's authority.

122. Plaintiff had clearly established rights under the Fourteenth Amendment to bodily integrity, to be free from sexual abuse and physical abuse while in state custody, and to reasonable protection from known and foreseeable harm.

123. The constitutional violations suffered by Plaintiff were caused by the Adelphoi Defendants' policies, customs, and practices, including but not limited to:

124. failing to adequately supervise staff members entrusted with authority over juveniles;

a. failing to investigate complaints and warning signs of abuse;

b. failing to discipline or remove staff members who posed a danger to resident youth;

c. failing to implement adequate reporting, monitoring, and protective safeguards; and

d. tolerating and permitting a culture in which abuse, grooming, retaliation, and exploitation of resident youth could occur.

125. Prior to and during the abuse suffered by Plaintiff, the Adelphoi Defendants knew or should have known that juveniles in their custody faced a substantial risk of sexual abuse, physical abuse, and exploitation by staff members.

126. Despite this knowledge, the Adelphoi Defendants acted with deliberate indifference to Plaintiff's safety and constitutional rights by failing to take reasonable measures to protect him from known and foreseeable risks.

127. The acts and omissions of the Adelphoi Defendants shocked the conscience and demonstrated deliberate indifference to Plaintiff's constitutional rights and bodily integrity.

128. As a direct and proximate result of the Adelphoi Defendants' conduct, Plaintiff suffered physical injury, emotional distress, psychological trauma, humiliation, and other damages.

## PENNSYLVANIA STATE LAW CLAIMS

### COUNT 3 – Negligence
### Plaintiff v. Adelphoi Defendants

129. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

130. At all relevant times, Plaintiff was a minor placed in custody, care, supervision, and control of the Adelphoi Defendants pursuant to court-ordered juvenile placements.

131. By accepting custody of juvenile residents, the Adelphoi Defendants owed Plaintiff a duty to exercise reasonable care to provide a safe residential and educational environment, to protect resident youth from abuse and exploitation, and to implement reasonable safeguards to prevent foreseeable harm.

132. The Adelphoi Defendants breached these duties through acts and omissions including, but not limited to:

a. failing to adequately supervise staff members entrusted with authority over resident youth;

b. failing to properly monitor interactions between staff and resident juveniles;

c. failing to implement adequate reporting, monitoring, and investigative procedures for allegations of abuse;

d. failing to adequately investigate complaints and warning signs of staff misconduct;

e. failing to protect resident youth from known and foreseeable risks of sexual abuse, physical abuse, and exploitation by staff members; and

f. permitting conditions within Adelphoi facilities that allowed abuse to occur without detection or intervention.

133. As a direct and proximate result of the Adelphoi Defendants' negligence, Plaintiff suffered physical injury, emotional distress, psychological trauma, humiliation, and other damages.

**COUNT 4 – Negligent Hiring**
**Plaintiff v. Adelphoi Defendants**

134. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

135. The Adelphoi Defendants had a duty to exercise reasonable care in hiring employees who would be entrusted with authority, supervision, and direct contact with resident youth.

136. This duty included the obligation to conduct reasonable background investigations and screening of applicants prior to placing them in positions of authority over juveniles.

137. The Adelphoi Defendants knew or should have known that certain employees hired to supervise or interact with resident youth posed an unreasonable risk of harm to those juveniles.

138. The Adelphoi Defendants nevertheless hired employees who were unfit or unsuitable to supervise vulnerable youth.

139. As a direct and proximate result of the Adelphoi Defendants' negligent hiring practices, Plaintiff was subjected to abuse and exploitation by those employees.

**COUNT 5 – Negligent Retention**
**Plaintiff v. Adelphoi Defendants**

140. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

141. The Adelphoi Defendants knew or reasonably should have known that certain employees engaged in inappropriate, abusive, or dangerous conduct toward resident youth.

142. Despite knowledge of complaints, warning signs, or incidents suggesting misconduct, the Adelphoi Defendants failed to investigate, discipline, remove, or otherwise restrict those employees.

143. By retaining employees who posed a danger to resident youth, the Adelphoi Defendants created and maintained an unreasonable risk of harm to Plaintiff.

144. As a direct and proximate result of the Adelphoi Defendants' negligent retention of these employees, Plaintiff was subjected to abuse and suffered the injuries described herein.

**COUNT 6 – Negligent Supervision**
**Plaintiff v. Adelphoi Defendants**

145. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

146. The Adelphoi Defendants had a duty to reasonably supervise employees who exercised authority over resident juveniles.

147. The Adelphoi Defendants knew or should have known that inadequate supervision of staff members working closely with vulnerable youth created a significant risk of abuse and exploitation.

148. The Adelphoi Defendants breached this duty by failing to adequately supervise staff members responsible for the care, discipline, and supervision of resident youth.

149. This failure to supervise allowed employees to abuse their authority and exploit their access to resident youth.

150. As a direct and proximate result of the Adelphoi Defendants' negligent supervision, Plaintiff suffered physical injury, emotional distress, psychological trauma, and other damages.

**COUNT 7 – Gross Negligence**
**Plaintiff v. Adelphoi Defendants**

151. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

152. The Adelphoi Defendants owed Plaintiff a duty to provide reasonable protection, supervision, and care while Plaintiff was in their custody and control.

153. The Adelphoi Defendants were aware, or should have been aware, that juveniles placed in their residential facilities were vulnerable and dependent upon staff for protection from abuse.

154. Despite this knowledge, the Adelphoi Defendants failed to implement, enforce, or adequately monitor policies and practices necessary to protect resident youth from abuse by staff members.

155. The Adelphoi Defendants' conduct represented a reckless and gross deviation from the standard of care expected of operators of custodial juvenile residential facilities.

156. The Adelphoi Defendants' actions demonstrated a conscious disregard for the safety and wellbeing of resident youth, including Plaintiff.

157. As a direct and proximate result of the Adelphoi Defendants' gross negligence, Plaintiff suffered physical injury, emotional distress, psychological trauma, humiliation, and other damages.

**COUNT 8 – Vicarious Liability / Respondeat Superior**
**Plaintiff v. Adelphoi Defendants**

158. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

159. At all relevant times, the staff member who abused Plaintiff was an employee or agent of the Adelphoi Defendants.

160. These employees were acting within the scope of their employment or were enabled to commit the wrongful acts described herein by virtue of the authority and access granted to them by the Adelphoi Defendants.

161. The Adelphoi Defendants are therefore vicariously liable for the tortious acts of their employees under the doctrine of respondeat superior.

162. As a direct and proximate result of these acts, Plaintiff suffered the injuries described herein.

**COUNT 9 – Negligent Infliction of Emotional Distress**
**Plaintiff v. Adelphoi Defendants**

163. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

164. The Adelphoi Defendants' negligent acts and omissions placed Plaintiff in the zone of danger of physical injury and resulted in actual physical and emotional harm.

165. Plaintiff suffered severe emotional distress as a result of the abuse and the Adelphoi Defendants' failure to protect him.

166. Plaintiff's emotional distress was accompanied by physical injury, psychological trauma, and other manifestations of harm.

167. As a direct and proximate result of the Adelphoi Defendants' negligence, Plaintiff suffered the damages described herein.

**COUNT 10 – Corporate Liability**

**Plaintiff v. Adelphoi Defendants**

168. The previous paragraphs set forth above are incorporated herein by reference.

169. Prior to the abuse suffered by Plaintiff, the Adelphoi Defendants knew or should have known that residents within their facilities faced a substantial risk of sexual abuse, physical abuse, and exploitation by staff members. This knowledge arose from, among other things, prior complaints of abuse by residents, internal reports of staff misconduct, prior lawsuits and investigations involving abuse within Adelphoi programs, and other information available to Adelphoi concerning the safety of juveniles placed within its facilities.

170. Despite this knowledge, the Adelphoi Defendants failed to implement and enforce adequate policies, monitoring systems, and safeguards necessary to detect, prevent, and respond to abuse of resident youth.

171. At all relevant times, the Adelphoi Defendants owned, operated, managed, controlled, and were responsible for the administration and operation of residential juvenile facilities where Plaintiff was placed pursuant to court orders.

172. As operators of custodial residential programs for juveniles, the Adelphoi Defendants owed a direct and non-delegable duty to resident youth, including Plaintiff, to implement and enforce policies, practices, and safeguards reasonably designed to protect juveniles from abuse, exploitation, and foreseeable harm.

173. This duty included, but was not limited to, the obligation to:

a. establish and enforce policies and procedures designed to prevent sexual abuse, physical abuse, and exploitation of resident youth;

b. implement adequate reporting, monitoring, and investigative procedures for allegations of abuse involving staff members;

c. maintain adequate staffing levels and supervision to ensure that staff interactions with resident youth were appropriately monitored;

d. ensure that employees working with vulnerable juveniles were properly trained regarding professional boundaries, abuse prevention, and mandatory reporting obligations;

e. investigate complaints, warning signs, and incidents suggesting abuse or misconduct by staff members; and

f. take prompt and appropriate corrective action when abuse or misconduct was reported or suspected.

174. The Adelphoi Defendants knew or should have known that juveniles placed in their facilities were vulnerable and dependent upon staff for supervision, protection, and care.

175. Despite this knowledge, the Adelphoi Defendants failed to implement, enforce, or adequately monitor policies and safeguards necessary to protect resident youth from abuse by staff members.

176. The Adelphoi Defendants further failed to adequately supervise the operation of their facilities and failed to ensure that appropriate systems existed to detect, investigate, and prevent abuse of resident juveniles.

177. As a result of these systemic failures, conditions existed within Adelphoi facilities that permitted staff members to abuse, exploit, and harm resident youth, including Plaintiff.

178. The acts and omissions of the Adelphoi Defendants constituted corporate negligence and a reckless disregard for the safety and wellbeing of resident juveniles entrusted to their custody.

179. As a direct and proximate result of the Adelphoi Defendants' corporate negligence, Plaintiff suffered physical injury, emotional distress, psychological trauma, humiliation, and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jeremy Lee Hensel respectfully requests that this Court enter judgment in his favor and against Defendants Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., Adelphoi Western Region, Inc., and John/Jane Does 1–100, and award the following relief:

a. Compensatory damages in an amount to be determined at trial for the physical, emotional, psychological, and economic injuries suffered by Plaintiff as a result of Defendants' unlawful conduct;

b. Punitive damages against the appropriate Defendants for their reckless, willful, and deliberate disregard of Plaintiff's constitutional rights and safety;

c. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and other applicable provisions of law;

d. Pre-judgment and post-judgment interest as permitted by law;

e. Such other and further relief as the Court deems just and appropriate.

**JURY TRIAL DEMAND**

180. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

/s/

Michael Van der Veen, Esquire
Bar ID: 75616
Steven R. Bryson, Esquire
Bar ID: 324942
1219 Spruce Street
Philadelphia, PA 19107
Phone: 215-546-1000
Email**:** mtv@mtvlaw.com
Email: sbryson@mtvlaw.com
**ATTORNEYS FOR PLAINTIFFS**

**Date**: September 11, 2026